BURRILL COLLINS et al., Appellants, v. DENVER & RIO GRANDE RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, June 13, 1914.

1. CARRIERS OF GOODS: Railroads: Commission Man: Right to Sue. A factor, broker or other agent to whom a carload of fruit shipped by the owner was consigned for sale, the former to receive a commission for the sale and return balance to the owner has such an interest in the property that he may maintain an action against the carrier for damage to the fruit and recover the full amount of loss. His action would bar a suit by the owner; though all damage he recovered above his special interest would be held by him to account for to the owner.

2. ————: Settlement With Owner. If a factor or broker receives a carload of fruit shipped to him by the owner to sell on commission and finds it damaged, he has sufficient interest to maintain an action for the full amount of injury. But if he sells the fruit and makes return to the owner and settles with him by receiving his commission, then he has no further interest and cannot maintain an action for the damaged condition of the fruit.

3. ————: Interstate Shipment: Carmack Amendment: Common-Law Duty. The Carmack amendment (sec. 20) to the Hepburn Act, in declaring that the carrier in interstate shipments shall be liable for injury to freight "caused by it" does not change the common-law rule of duty owing to the shipper; and does not make it necessary that the latter affirmatively

show how the shipment was damaged. If the shipper shows a delivery to the carrier in good condition and receipt in bad condition he makes a prima-facie case.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson,* Judge.

REVERSED AND REMANDED.

*Hal. R. Lebrecht* and *E. E. Strickland* for appellants.

(1) The court erred in giving a peremptory instruction to the jury to find for the defendant and in refusing to set aside the nonsuit on plaintiff's motion. Vol. 6, Cyc., p. 510; Lloyd v. Storage Co., 223 Pa. Rep. 148; Adams Express Co. v. Croninger, 226 U. S. 491; Joseph v. Railroad, 157 S. W. 837.

*E. N. Clark* and *Ed. J. White* for respondent.

(1) The plaintiffs failed to establish a legal liability against the defendant, upon the close of their evidence, and the action of the trial court in sustaining a demurrer to the evidence was proper, for the following reasons: Nathan v. Railroad, 135 Mo. App. 46; Van Buskirk v. Railroad, 131 Mo. App. 357; Union Feed Co. v. Clipper Line, 31 Wash. 38; Hutchinson, Carriers (3 Ed.), sec. 1316, p. 1563; Burgess v. Railroad, 161 S. W. 858.

ELLISON, P. J.—Plaintiff's action is to recover damages claimed on a shipment of fruit over defendant's road. At the close of the testimony the court took the view that plaintiff had not shown that he had a right of action, and he took a nonsuit.

It appears that plaintiff is a partnership selling fruits for persons who ship it to them at Kansas City, on a commission for such service. In the present in-

stance one John Ritzman living in the State of New Mexico shipped a car load of apples and pears from that State consigned to plaintiff at Kansas City, for sale and returns. When the fruit arrived plaintiff examined it in the car and found it was heated "soft and mushy" and refused to accept it. Plaintiff ordered it to the defendant's wareroom for sale when it was sold at auction for a greatly reduced price. The testimony showed that Ritzman was the owner "during the transit" and when sold and that plaintiff's only interest was to sell and receive his commission and return balance of proceeds to Ritzman.

A party plaintiff to maintain an action for damages to personal property caused by the negligence of a carrier must show that he has some beneficial interest in the property. A factor or broker to whom property has been consigned by the owner for sale on commission, has such an interest. He is a bailee with an interest and he may maintain an action for damages against the carrier. It is not necessary to his capacity as a plaintiff that he be entitled to all the damage, though he may recover the full damage done. The judgment would bar another action by the real owner and the owners share would be held by the consignee to be accounted for by him. This seems to be in accord with the weight of authority. [Edgerton v. Railroad, 240 Ill. 311; Railway v. Implement Co., 73 Kas. 295; Chamberlin v. West, 37 Minn. 54; Boston & M. Railroad v. Warrior Power Co., 76 Me. 251, 259; Griffith v. Ingledew, 6 Serg. & R. 429; South. Ex. Co. v. Armstead, 50 Ala. 350, 352; Finn v. Railroad, 112 Mass. 524; Van Zile on Carriers, sec. 697; 3 Hutchinson on Carriers, sec. 1306; 3 Ency. Pl. & Pr., 833-834.]

The consignee, factor or broker, who may have a special interest which would entitle him to bring an action for damages as just indicated, may part with that interest by final settlement and adjustment with the general owner and in thus putting an end to his

interest cut off the accompanying right to an action. Defendant states in the brief that plaintiff did that in this case, but we find the record silent on that question.

. This being an interstate shipment and governed by the law of Congress and the decisions of the Supreme Court of the United States (Joseph v. Railroad, 175 Mo. App. 18; Adams Ex. Co. v. Croninger, 226 U. S. 491), defendant insists that plaintiff failed to make out a case in that it did not affirmatively show that the defendant, or connecting carriers, "caused" the injury to the fruit, as contemplated by section 20 of the Carmack amendment to the Hepburn Act (34 Stat. at Large 584, ch. 3591) reading as follows: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed: *Provided,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

Defendant's position is, that this statute has made some change in the carrier's common law liability, or, at least, in the mode of showing such liability. But that is not the interpretation given the act by the Supreme Court of the United States. The object of the words that the carrier, "shall be liable to the lawful holder thereof (the bill of lading) for any loss, damage or injury to such property caused by it" was not to make the carrier absolutely responsible for all hap-

penings *though altogether uncontrollable*. The object, was rather to prevent that degree of liability. The statute "plainly implies a liability for some default in its common-law duty as a common carrier." [Adams Ex. Co. v. Croninger, 226 U. S. 491, 507.] To the same effect is K. C. S. Railroad v. Carl, 227 U. S. 639. And in M., K. & T. Railroad v. Harriman Bros., 227 U. S. 657, 672, it is said: "The liability imposed by the statute is the liability imposed by the common law upon a common carrier and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable and does not exempt from loss or responsibility due to negligence." And it was said by the Federal District court in Iowa (Storm L. T. & T. Factory v. St. L. Railroad, 209 Fed. Rep. 895) that: "The Carmack Amendment does not create its (carriers) liability for such loss, for such liability arises under the common law rule which holds a common carrier of property liable for its loss or injury while in its custody as such carrier from all causes not due to an Act of God or the public enemy. . . . But the purpose of this amendment as held in Atlantic Coast Line v. Mills, Galveston Railroad v. Wallace and Harriman v. Railroad, is to make the primary carrier liable as at common law for a loss of property occurring upon the line of its agents, the connecting carrier or carriers, the same as if it had occurred upon its own line."

It was therefore sufficient if plaintiff showed a delivery to the defendant in good condition and receipt in bad condition. For, at common law, that was a showing of damage caused by the carrier prima facie, and it was for the latter to relieve itself by evidence of any lawful excuse.

The foregoing views result in reversing the judgment and remanding the cause. All concur.